## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ANKIT DEVARSH ZAYKARIYA; and SASCHE-TIYE ZAYKARIYA, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. CIV-25-316-D |
| FREEDOM MORTGAGE CORPORATION, et al., | ) ) ) | |
| Defendants. | ) ) | |

## ORDER

Before the Court is Defendant Freedom Mortgage Corporation's Motion to Dismiss Plaintiffs' Complaint with Incorporated Memorandum of Law [Doc. No. 53]. Plaintiffs, appearing *pro se,* filed a response [Doc. No. 54], and Defendant filed a reply [Doc. No. 55]. The matter is fully briefed and at issue.

## FACTUAL BACKGROUND

In their Amended Complaint [Doc. No. 6], Plaintiffs allege various claims against their mortgage company, Freedom Mortgage Corporation (Freedom), related to Plaintiffs' mortgage and the state-court foreclosure proceedings initiated by Freedom. *See Freedom Mortg. Co. v. Robert Patterson, Robbin Patterson*, Case No. CJ-2023-363, District Court of Comanche County, Oklahoma (Foreclosure Action).[1] Plaintiffs included as defendants

---

[1]  The Court takes judicial notice of the Foreclosure Action. *See https://www.oscn.net/dockets/GetCaseInformation.aspx?db=comanche&number=CJ-2023-363&cmid=550496.*

It appears that Plaintiffs changed their names from Robert Milton Patterson and Robbin M. Patterson to Ankit Devarsh Zaykariya and Sasche-Tiye Zaykariya in July of 2024. *See*

the law firm and individual attorneys who represented Freedom in the Foreclosure Action—The Mortgage Law Firm, PLLC, Alex Rivera, and Matthew Eads (together, the Attorney Defendants).

## I.    Underlying Mortgage and Foreclosure Action

On December 1, 2022, Plaintiffs executed a mortgage loan with Freedom [Doc. No. 6, at ¶ 7]. A delinquency notice filed by Plaintiffs reflect that they stopped making payments in or around March of 2023 [Doc. No. 9, at 62]. Freedom filed the Foreclosure Action in Comanche County District Court on July 27, 2023. Plaintiffs (defendants in the Foreclosure Action) repeatedly moved to dismiss the Foreclosure Action, and the state court denied Plaintiffs' motions to dismiss. Both parties moved for summary judgment, and the state court held a hearing on July 24, 2025. Thereafter, the state court granted judgment in favor of Freedom.[2]

## II.    Present Litigation

On March 13, 2025, during the pendency of the Foreclosure Action, Plaintiffs filed this action against Freedom and the Attorney Defendants. Plaintiffs allege that Freedom violated various federal statutes related to their underlying mortgage and the Foreclosure Action, to include the Truth In Lending Act, 15 U.S.C. §§ 1601, *et seq.*, the Real Estate

---

*https://www.oscn.net/dockets/GetCaseInformation.aspx?db=comanche&number=CV-2024-191&cmid=564882* (name change docket for Mr. Zaykariya) and https://www.oscn.net/dockets/GetCaseInformation.aspx?db=comanche&number=CV-2024-192&cmid=564883 (name change docket for Mrs. Zaykariya).

[2] The pending sheriff's sale was recently recalled due to Plaintiffs' filing of a Chapter 13 bankruptcy petition, addressed below.

2

Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq*., the Fair Debt Collection Practices

Act, 15 U.S.C. § 1692, *et seq*., and the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*.

Thereafter, Freedom moved to dismiss Plaintiffs' action, pursuant to FED. R. CIV. P.

12(b)(6).

### III.     Chapter 13 Bankruptcy

While Freedom's Motion to Dismiss [Doc. No. 53] was pending, Plaintiffs filed a

Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the Western

District of Oklahoma, Case No. 25-13086. That case remains pending. Although Plaintiffs

filed a Notice of Bankruptcy in this action [Doc. No. 67], the pending bankruptcy does not

prevent this Court from dismissing this action pursuant to Rule 12(b)(6). Because the

automatic stay, pursuant to 11 U.S.C. § 362(a), applies only to actions *against the debtor*

or against property of the estate. *See, generally,* 11 U.S.C. § 362(a)(1) – (8); *see also*

*Riviera Drilling & Expl. Co. v. Gunnison Energy Corp.*, 412 F. App'x 89, 95-96 (10th Cir.

2011) (unpublished)[3] (affirming dismissal of a plaintiff's action during bankruptcy

proceedings because the lawsuit was brought *by* the debtor, not *against* the debtor, and "an

attempt to dismiss or defeat a debtor's lawsuit is not an act to obtain possession or exercise

control over property of the debtor's estate."). For these reasons, the Court concludes that

this Order is not precluded by the automatic stay.

---

[3] Unpublished opinions are cited pursuant to Fed. R. App. P. 32.1(a) and 10th Cir. R. 32.1(A).

### STANDARD OF DECISION

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The statement must be sufficient to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotations and citation omitted). Under this standard, a complaint needs "more than labels and conclusions," but it "does not need detailed factual allegations." *Id.* Rather, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

At the pleading stage, the Court must "accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). However, "if [allegations] are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (internal quotations omitted). Although pro se pleadings are to be liberally construed, district courts should not "assume the role of advocate for the pro se litigant." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

## DISCUSSION

## I.  Truth In Lending Act, 15 U.S.C. §§ 1601, *et seq.* (TILA)

In their Amended Complaint [Doc. No. 6], Plaintiffs allege that they "executed a mortgage loan with [Freedom] on or about December 1, 2022," and that they attempted to rescind the mortgage transaction in April of 2023, and again in February of 2025. *Id.* at ¶¶ 7-9. Plaintiffs contend that Freedom "failed to cure rescission and instead sent boilerplate responses lacking signatures or verification." *Id.* at ¶ 16. Plaintiffs further allege that Freedom lacked standing to bring the Foreclosure Action "due to the rescission of the mortgage by Plaintiff[s] under TILA." *Id.* at ¶ 19. Plaintiffs claim that Freedom violated TILA by (1) failing to acknowledge Plaintiffs' rescission under 15 U.S.C. § 1635; (2) failing to "provide clear disclosures and necessary written notices regarding the right to rescind the mortgage"; and (3) misstating the Annual Percentage Rate (APR) in closing disclosures.

Although Section 1635 of TILA allows consumers to rescind a loan under certain circumstances, Section 1635(e)(1) specifically exempts residential mortgage transactions from the right to rescind. *See* 15 U.S.C. § 1635(e)(1) (Section 1635 "does not apply to … a residential mortgage transaction[.]"). TILA defines a "residential mortgage transaction" as "a transaction in which a mortgage, deed of trust, … or equivalent consensual security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling." 15 U.S.C. § 1602(x) (formerly codified at 15 U.S.C. § 1602(w)).

In the present motion, Freedom asserts that Plaintiffs were not entitled to rescission because the loan at issue was a "purchase money mortgage secured by their principal residence[.]" [Doc. No. 53, at 11]. The Court takes judicial notice of the underlying mortgage, which appears to meet the definition of a "residential mortgage transaction." In their response, Plaintiffs do not contest the residential character of their loan transaction, nor do Plaintiffs claim to have obtained the mortgage for any reason other than to acquire the underlying property. Accordingly, Plaintiffs' rescission-based claims should be dismissed. *See Singh v. U.S. Bank Nat'l Ass'n.*, 687 F. App'x 721, 723 (10th Cir. 2017) (unpublished) (affirming Rule 12(b)(6) dismissal of TILA claims seeking rescission where the underlying loan was alleged to be obtained for the purchase of a home).

For Plaintiffs' TILA claims that are not based on rescission rights, Plaintiffs must have filed suit "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). In their Amended Complaint [Doc. No. 6], Plaintiffs allege that the mortgage loan was executed on December 1, 2022. *Id.* at ¶ 7. Post-closing, Plaintiffs allege that they discovered TILA violations and sent a rescission letter in April of 2023. *Id.* at ¶ 9. Accordingly, Plaintiffs' remaining TILA claims—filed in this action on March 13, 2025— are time-barred and will be dismissed.

## II.    Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.* (RESPA)

Plaintiffs also allege a violation of RESPA Section 2605(e). Under this subsection, "[i]f any servicer of a federally related mortgage loan receives a qualified written request from the borrower … for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 5

days[.]" 12 U.S.C. § 2605(e)(1)(A). A "qualified written request" (QWR) is written correspondence that identifies the name and account of the borrower and "includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(B). Within thirty days of receiving a QWR, the loan servicer must "make appropriate corrections in the account of the borrower" or provide a written explanation as to why the servicer believes the account is correct or why the information requested is otherwise unavailable. 12 U.S.C. § 2605(e)(2)(A), (B), (C).

Notably, a letter cannot be "qualified" under the statute if it does not relate to the servicing of the account. *See Fowler v. Bank of Am., Corp.*, 747 F. App'x 666, 669 (10th Cir. 2018) (unpublished) ("[A] letter isn't a QWR—and thus doesn't trigger the servicer's duty to respond—unless it 'relat[es] to servicing,' which RESPA defines as 'receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts…, and making the payments of principal and interest and such other payments.'"); *see also Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 667 (9th Cir. 2012) ("[W]e hold that letters challenging only a loan's validity or its terms are not qualified written requests that give rise to a duty to respond under § 2605(e).").

Further, to state a RESPA claim, "borrowers must show actual damages from a servicer's noncompliance." *Moral v. PHH Mtg. Corp.*, 2024 WL 2992360, at *5 (10th Cir. June 14, 2024) (unpublished) (citing *Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 523 (10th Cir. 2013)).

Upon review of Plaintiffs' Amended Complaint [Doc. No. 6], their allegations fall short of stating a plausible claim under RESPA § 2605(e). For their RESPA claim, Plaintiffs allege that "Defendants sent multiple generic responses to debt validation and QWR notices, refusing to verify debt in its entirety while sending the same documents, which were insufficient and considered as a nonresponse, and constitutes administrative default." *Id.* at ¶ 17. These conclusory statements do not suffice to state a RESPA violation. Rather, Plaintiffs' own allegations reflect that Plaintiffs' communications related to debt validation, and not loan servicing, which is not sufficient to allege that Plaintiffs transmitted a QWR. Further, Plaintiffs' Amended Complaint fails to allege any actual damages stemming from Freedom's alleged failure to respond to Plaintiffs' communications. For these reasons, Plaintiffs' RESPA claim will be dismissed.

## III.    Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. (FDCPA)

Plaintiffs also allege that Freedom violated the FDCPA by "fail[ing] to validate the debt within the required timeframe[.]" [Doc. No. 6, at ¶ 44]. Notwithstanding the conclusory nature of Plaintiffs' FDCPA allegations, Plaintiffs' Amended Complaint also fails to allege that Freedom was a debt collector subject to the FDCPA. *See Obduskey v. Wells Fargo*, 879 F.3d 1216, 1219-20 (10th Cir. 2018) (mortgage servicing company that began servicing the loan before the plaintiff went into default was not a "debt collector" under the FDCPA); *see also Ladouceur v. Wells Fargo*, 682 F. App'x 649, 652 (10th Cir. 2017) (unpublished) (FDCPA did not apply to creditors such as the originating mortgage lender and servicer). Here, Plaintiffs' own allegations reflect that Freedom was the original lender and servicer of the subject mortgage. [Doc. No. 6, at ¶ 7] ("Plaintiffs executed a

mortgage loan with Freedom Mortgage Corporation on or about December 1, 2022."). Without alleging how Freedom is subject to the FDCPA, Plaintiffs' FDCPA claims will be dismissed.

## IV.    Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*. (FCRA)

For Plaintiffs' claim that Freedom violated the FCRA, they merely state: "Unlawful post-rescission credit reporting." [Doc. No. 6, at ¶ 69]. Although Plaintiffs also incorporate by reference the preceding allegations of the Amended Complaint, Plaintiffs never allege any specific conduct by Freedom that purportedly violates the FCRA. Plaintiffs' FCRA claim will be dismissed.

## V.    State Law Claims

Plaintiffs' Amended Complaint could be construed to include various state law tort claims, such as fraud and misrepresentation. The Court, however, declines to exercise supplemental jurisdiction over the remaining state law claims. Thus, the Court dismisses the state law claims without prejudice. *See Gobert v. Newton-Embry*, 820 F. App'x 783, 787–88 (10th Cir. 2020) (unpublished) (determining the district court had the option of dismissing remaining state law claims or remanding them and finding it was not inappropriate to dismiss them); *accord Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1232 (10th Cir. 2020) (noting the "regular practice in this circuit of dismissing without prejudice state-law claims for which the district court has only supplemental, rather than original, jurisdiction when the federal-law claims to which they are supplemental are dismissed early in the litigation"); *Tonkovich v. Kansas Bd. of Regents, Univ. of Kansas*, 254 F.3d 941, 945 (10th Cir. 2001) (stating that 28 U.S.C.

§ 1367 grants the court discretion to dismiss supplemental state law claims when the court dismisses the federal claims over which it had original jurisdiction).

## VI.    Claims Against the Attorney Defendants

Plaintiffs also named the Attorney Defendants as defendants in this litigation. However, Plaintiffs' Amended Complaint is deficient in that it fails to allege any conduct by the Attorney Defendants. Apart from introducing the Attorney Defendants in paragraph 6 of the Amended Complaint, Plaintiffs fail to explain how any of their claims are premised on the Attorney Defendants' conduct. Although Plaintiffs alternate between "Defendant" and "Defendants" throughout their Amended Complaint, Plaintiffs fail to tie any specific conduct to the Attorney Defendants. Accordingly, Plaintiffs' claims against the Attorney Defendants will be dismissed.[4]

## VII.    Remaining Claims

To the extent that Plaintiffs intended to state any other claims, Plaintiffs' Amended Complaint fails to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). For example, Plaintiffs allege "administrative default and estoppel" for "notices sent repeatedly without cure or valid response to all request in its entirety." [Doc. No. 6, at ¶ 55]. This is insufficient to put Defendants on notice of Plaintiffs' claim, nor can the Court discern from Plaintiffs' limited statements the basis for their claim or requested relief. Therefore, for any remaining claims

---

[4] Accordingly, the Attorney Defendants' Motion to Dismiss for insufficient service of process [Doc. No. 14] is **DENIED** as **MOOT**.

that Plaintiffs attempted to state, the Court finds that Plaintiffs' Amended Complaint does not comply with Rule 8(a)(2), and those claims are hereby dismissed.[5]

## VIII.  Leave to Amend

The Court finds that Plaintiffs' action should be dismissed and that Plaintiffs need not be granted leave to amend their pleading at this time. "Where a plaintiff does not move for permission to amend the complaint, the district court commits no error by not granting such leave." *Burnett v. Mortg. Elec. Regis. Sys., Inc.*, 706 F.3d 1231, 1238 n.4 (10th Cir. 2013); *see also Garman v. Campbell Cnty. Sch. Dist. No. 1*, 630 F.3d 977, 986 (10th Cir. 2010). The Court further notes that Plaintiffs previously filed a Motion for Leave to File Second Amended Complaint [Doc. No. 56], which was stricken by the Court [Doc. No. 57]. In that Order, the Court explicitly provided that Plaintiffs' motion was stricken for failure to attach the proposed amended pleading as an exhibit to the motion. In the several months following the Court's Order, Plaintiffs have not re-filed a motion for leave to amend their pleading.

Additionally, upon consideration of Plaintiffs' previous submissions [Doc. Nos. 1, 6], the Court finds that allowing Plaintiffs to amend their complaint for a second time would be futile. The Court also feels compelled to note the various instances throughout Plaintiffs' Amended Complaint in which Plaintiffs cite to fake cases or fundamentally mis-state the facts or holding of a case. For some examples, Plaintiffs cite to the following fake

---

[5] Given the Court's dismissal of this action, Plaintiffs' Motion for Sanctions [Doc. No. 58], Plaintiffs' Motion to Strike [Doc. No. 61], and Freedom's Motion to Stay [Doc. No. 63] are **DENIED** as **MOOT**.

cases, which appear to be "hallucinations" caused by Plaintiffs' suspected use of artificial intelligence: *Anderson v. Nationwide Mortg. Grp., Inc.*, 281 B.R. 177 (Bankr. M.D. Fla. 2002); *Williams v. Lowndes Cnty.*, 475 F.3d 820 (11th Cir. 2007); *Smith v. Aegis Mortg. Corp.*, 560 F.3d 837 (8th Cir. 2009); *In re Barlow*, 59 B.R. 707 (Bankr. D. Utah 1986); *McEwen v. McCullough*, 347 F. Supp. 2d 349 (E.D. Pa. 2004); *Edwards v. First Nat'l Bank of Anchorage*, 67 F.3d 1299 (9th Cir. 1995); *Sturdivant v. BAC Home Loans*, 159 Cal.Rptr.3d 113 (2013); and *United States v. Signatone Corp.*, 60 F.3d 365 (7th Cir. 1995). Plaintiffs also cited to *Speleos v. BAC Home Loans*, 755 F.Supp.2d 304 (D. Mass. 2010) and represented that the case stood for finding a "RESPA violation for failure to respond adequately to QWRs," but the *Speleos* case did not discuss RESPA at all.

To this point, the Court directs Plaintiffs to a recent Tenth Circuit decision, *Moore v. City of Del City*, in which the Tenth Circuit alternatively dismissed a party's appeal "as a sanction for [the party's] misuse of GenAI and order[ed] that in any future filings …, [the party] must, under penalty of perjury, state whether she used a GenAI tool and verify that all case citations accurately refer to actual, existing cases." 2025 WL 3471341, at *3 (10th Cir. Dec. 3, 2025) (unpublished). In any future filings with this Court, the Court warns Plaintiffs that use of AI-generated, fake case citations may result in sanctions, to include dismissal.

## CONCLUSION

For these reasons, Freedom's Motion to Dismiss [Doc. No. 53] is **GRANTED**. This action is **DISMISSED without prejudice**. A separate judgment shall be entered.

12

**IT IS SO ORDERED** this 9th day of January, 2026.

TIMOTHY D. DeGIUSTI
Chief United States District Judge